**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BREAKWATER TRADING LLC, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-03515 (PAE) |
| Plaintiff, | [rel. 1:20-cv-4523] |
| v. | [rel. 1:20-cv-5285] |
| | [rel. 1:20-cv-5298] |
| JPMORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC and JOHN DOES 1-25, | [rel. 1:20-cv-5360] |
| | [rel. 1:20-cv-5772] |
| | [rel. 1:20-cv-5918] |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF BREAKWATER PLAINTIFFS' MOTION FOR
CONSOLIDATION OF ALL RELATED CASES AND APPOINTMENT OF LINDA
NUSSBAUM AND JOSEPH MELTZER AS INTERIM CO-LEAD CLASS COUNSEL**

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ..................................................................................................5

    A.    Nussbaum Law Group and its Clients Have Aggressively Prosecuted this
Action. ..........................................................................................................6

    B.    Nussbaum Law Group has Explored Early Discovery and Preliminary Rule
408 Issues with Defendants. ........................................................................9

III. ARGUMENT ......................................................................................................10

    A.    Breakwater and Endeavor are Better Positioned to Assist Counsel and Serve
the Class than Any Other Plaintiffs. ..........................................................11

    B.    Nussbaum Law Group and Kessler Topaz Have Performed Substantial
Work Identifying and Investigating Plaintiffs' Claims. .............................12

    C.    Nussbaum Law Group and Kessler Topaz Have Extensive Experience in
Complex Class Action Litigation ..............................................................13

    D.    Nussbaum Law Group and Kessler Topaz Have Committed and Will
Commit Significant Resources to this Litigation.......................................16

    E.    Diversity Interests Would be Best Served by the Appointment of Nussbaum
Law Group and Kessler Topaz. ..................................................................17

    F.    Lowey's Appointment Could Raise Potential Conflict Concerns. ..............18

    G.    The Related Actions Should be Consolidated. .............................................19

IV. CONCLUSION...................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*, 2020 WL 4218329 (S.D.N.Y. July 23, 2020) .................. 13

*In re Broiler Chicken Antitrust Litig.*, 2017 WL 4322823 (N.D. Ill. Sept. 28, 2017) ................................. 9

*In re High Tech Employee Antitrust Litig.*, No. 11-cv-2509 (N.D. Cal. Oct. 26, 2011) ............................ 9

*In re Interest Swaps Antitrust Litig.*, 2016 WL 4131846 (S.D.N.Y., Aug. 3, 2016) ................................. 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011) ......... 6

*In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687-JLL- JAD (D.N.J. July 5, 2016)............. 9

*In re Pool Products Distribution Market Antitrust Litig.*, No. 12-md-02328 (E.D. La. June, 4, 2012) ....... 9

*In re Robinhood Outage Litigation*, No. 20-cv-01626 (N.D. Cal.), ............................................................ 4

*Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 590 (W.D. Tex. 2002) ........................................................ 19

*Kuriakose v. Federal Home Loan Mortg. Co.*, 2008 WL 4974839 (S.D.N.Y., Nov. 24, 2008) ............... 19

*Mustafin v. GreenSky, Inc*., 2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) .............................................. 19

**Other Authorities**

Barta, Kleiner, and Neumann, *Is there a payoff from top-team diversity?,* McKinsey (Apr. 2012) .......... 17

Chamblee Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. Rev. 71 (2015) ................................... 17

Commodity Futures Trading Commission, Interpretive Guidance and Policy Statement on Disruptive Practices .................................................................................................................................................... 5

Dodge, *Facilitative Judging: Organizational Design in Mass-Multidistrict Litigation*, 64 Emory L.J. 329, (2014) ...................................................................................................................................................... 17

Hunt, Layton, and Prince, *Why diversity matters*, McKinsey (Jan. 2015) ................................................ 17

*Manual for Complex Litigation (Fourth)* § 10.22 ..................................................................................... 8

Scharf and Liebenberg, *First Chairs at Trial: More Women Need Seats at the Table, American Bar Association*, ABA Publishing (2015) ...................................................................................................... 17

The Hon. S. Duval Jr., *Considerations in Choosing Counsel for Multidistrict Litigation Cases and Mass Tort Cases*, Louisiana Law Review (Winter 2014) .............................................................................. 18

Third Circuit Task Force on Selection of Class Counsel, 208 F.R.D. 340, 416 n.283 (2002) .................... 8

**Rules**

Fed. R. Civ. P. 23(g)(1)(A) .................................................................................................................... 10

## I.   INTRODUCTION

Plaintiffs Breakwater Trading, LLC ("Breakwater"), Endeavor Trading, LLC ("Endeavor") and John Grace (together, the "Breakwater Plaintiffs") respectfully submit this memorandum in support of consolidating all related cases and appointing Linda Nussbaum of Nussbaum Law Group, P.C. ("NLG"), and Joseph Meltzer of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Interim Co-Lead Class Counsel. NLG has been actively developing this litigation from the outset, filing the first complaint in this District, immediately opening a constructive dialogue with counsel for JPMorgan,[1] actively working to centralize all related actions in this District, and regularly consulting with Breakwater, Endeavor, and several experts to analyze legal, factual, and damages issues. Kessler Topaz's in-house team of financial analysts, in conjunction with NLG, has been analyzing millions of Breakwater Plaintiffs' transactions during the relevant period, and has been working to further develop the factual allegations against Defendants, all to the benefit of the proposed class. This significant effort to develop legal theories and factual bases to support the spoofing claims asserted by plaintiffs will allow the case to proceed expeditiously and efficiently once leadership is established.

Ms. Nussbaum and Mr. Meltzer, together with the senior Plaintiffs' counsel who support their appointment,[2] have extensive experience in leading and successfully litigating complex class actions. Their appointment would mitigate the "repeat player" problem that has plagued Commodities Exchange Act ("CEA") class actions, serve diversity interests, and preclude any

---

[1] Defendants include: JP Morgan Chase & Co.; JP Morgan Securities LLC; JP Morgan Clearing Corp. (now known as JP Morgan Securities LLC); JP Morgan Futures Inc. (now known as JP Morgan Securities LLC) and John Does 1-25 (collectively, "Defendants" or "JPMorgan").

[2] Those counsel include Roberta Liebenberg of Fine Kaplan and Black, R.P.C. ("Fine Kaplan") and Joseph Goldberg of Freedman Boyd Hollander Goldberg Urias & Ward ("Freedman Boyd").

potential conflict raised by the pendency of *In re JPMorgan Precious Metals Spoofing Litig.*, 1:18-cv-10356-GHW (S.D.N.Y.) ("*Precious Metals*"), in which Lowey Dannenberg, P.C. ("Lowey") is sole lead counsel.[3] NLG and Kessler Topaz are dedicated to pooling their significant resources and expertise to work productively and efficiently in a streamlined structure to represent the interests of the class.

Ms. Nussbaum has over 30 years of experience in prosecuting complex class actions,[4] having successfully served as either sole or co-lead counsel over 25 times throughout her career, including in cases involving large financial institutions.[5] Ms. Nussbaum has the ability to lead this case whether its path is early mediation and possible resolution (a process first raised by JPMorgan's counsel), or full discovery, litigation, and if appropriate, trial. She recently served as one of two lead trial counsel in a five-week jury trial on behalf of her client Kaiser Foundation Health Plan, Inc., obtaining a jury verdict against Pfizer Inc. on RICO and state claims, and damages of $47 million (which were trebled and upheld on appeal). *See also* Ex. 1 (NLG firm resume).[6]

Ms. Nussbaum has also negotiated over 20 class-wide settlements, none of which were subject to significant objections by class members or rejected by any court. Based in part on Ms.

---

[3] *Precious Metals* and the related cases that are the subject of this Motion all arise from government investigations that are themselves related. *See infra* § II.A.

[4] Prior to founding NLG over five years ago, Ms. Nussbaum headed the antitrust groups at two prominent plaintiffs' class action firms.

[5] These matters include: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-md-1720 (E.D.N.Y.) ("*Interchange Fee*"); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (S.D.N.Y.); and *In re Zinc Antitrust Litig.*, No. 14-cv-3728 (S.D.N.Y.). Ms. Nussbaum has also recently represented HP, Inc. in a complex non-class financial trading matter against a major international bank.

[6] All references to "Ex." are to exhibits to the accompanying Declaration of Bart D. Cohen dated August 21, 2020.

Nussbaum's above-referenced conversations with counsel for JPMorgan in this matter, NLG is prepared if JPMorgan is inclined to explore settlement of this action at an early stage, having consulted with experts as to the discovery that would be necessary to evaluate liability and class-wide damages, analyzed Breakwater's and Endeavor's millions of transactions, as well as available public information, and having considered the legal and factual issues key to an early settlement. NLG has discussed a possible framework for early Rule 408 discussions, early discovery, and a protective order with Defendants, and has a plan in place to allow for an early exchange of information and, if warranted, mediation.

Kessler Topaz is a recognized leader in class action litigation against financial institutions and has recovered billions of dollars on behalf of the clients and classes it represents. The firm specializes in prosecuting high-stakes, financial fraud cases against large corporations and is always prepared to litigate a case to trial if necessary. Mr. Meltzer has been appointed by courts throughout the country to leadership positions and has extensive experience litigating in this District. *See, e.g., In re Bank of New York Mellon Corp. FOREX Transactions Litig.,* No. 12 MD 2335 (S.D.N.Y.) ($335 million settlement).[7] Mr. Meltzer's experience in complex litigation and successful record of achieving significant settlements makes him well-suited to serve as interim co-lead counsel here. *See also* Ex. 2 (Kessler Topaz firm resume).

Ms. Liebenberg and Mr. Goldberg, who represent plaintiff John Grace and support this application, were trial counsel for the plaintiff class in *In re Urethane [Polyether Polyols]*

---

[7] In addition to the BNY FOREX matter, these cases include: *Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank*, No. 09-00686 (S.D.N.Y.) ($150 million settlement) and *CompSource Okla. v. BNY Mellon,* No. 08-469 (E.D. Okla.) ($280 million settlement). Mr. Meltzer also represented a publicly-traded company in a large arbitration against AIG, Inc. related to securities lending losses in *Transatlantic Holdings, Inc. v. AIG*, No. 50-148T0037610 (AAA) ($75 million settlement subsequent to a hearing).

*Antitrust Litigation*, MDL No. 1616 (D. Kan.) ("*Urethanes*"). After a four-week trial, a jury returned a verdict for the class against The Dow Chemical Company in excess of $400 million, prior to trebling. After accounting for pre-trial settlements with other defendants of $139 million, the Court entered a final judgment for the class in the amount of $1.06 billion. This was the largest judgment ever awarded in a price-fixing case. The judgment was later unanimously affirmed by the Tenth Circuit. *In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014). While the case was pending on appeal in the United States Supreme Court, Dow agreed to a settlement for $835 million, the largest settlement ever recovered in a price-fixing case from a single defendant.

Courts have recently made efforts to avoid appointing "repeat players" when selecting interim lead counsel in order to appoint leadership with diverse perspectives and experiences. For example, the court in *In re Robinhood Outage Litigation*, No. 20-cv-01626 (N.D. Cal.), recently emphasized the need to avoid "the 'repeat player' problem in class counsel appointments that has burdened class action litigation and MDL proceedings." *Id.*, July 14, 2020 Order. This problem is especially pronounced in CEA class actions, where a small number of firms—including Lowey, Kirby McInerney LLP ("Kirby"), and Scott+Scott LLP ("Scott")— have dominated the field, touting their previous appointments as the basis for future appointments. NLG has actively participated in a number of CEA class actions. Kessler Topaz likewise has experience in CEA cases, including a case in which CEA claims were upheld in the days preceding this filing.[8] But neither firm could be characterized as a "repeat player." Courts across the country have likewise recognized the need for diversity in lead counsel appointments

---

[8] *Bergeron v. Monex Deposit Co.*, No. 8:17-cv-01968 (C.D. Cal., Aug. 18, 2020).

in the broader sense. Ms. Nussbaum founded and leads her firm, a rarity in class action and complex litigation practice.

Consolidation under Federal Rule of Civil Procedure 42(a) ("Rule 42(a)") is warranted because the related cases are all proposed class actions against common defendants, in which plaintiffs allege that Defendants manipulated the prices of Treasury Futures by spoofing in violation of the Commodity Exchange Act. Given the common defendants, statutory claims, and allegations, separate adjudication of these actions would create an unduly burdensome duplication of labor and expense. Consolidation will conserve judicial resources and eliminate the potential for conflicting results.

For the foregoing reasons, Plaintiffs respectfully request that the Court consolidate the related cases, appoint Linda Nussbaum of NLG and Joseph Meltzer of Kessler Topaz as lead counsel, and authorize them to delegate work to additional counsel, including Fine Kaplan and Freedman Boyd, as circumstances dictate. NLG and Kessler Topaz have also previously worked with the other firms seeking leadership positions, and could efficiently delegate work to any of them, if the Court should so order.[9]

## II.    BACKGROUND

Plaintiffs allege that Defendants manipulated the prices of U.S. Treasury futures contracts and options on those contracts (collectively "Treasury Futures") by spoofing, a practice the Commodity Futures Trading Commission defines as "bidding or offering with the intent to cancel the bid or offer before execution," including "submitting or canceling bids or offers with

---

[9] In *Forex*, NLG served with Lowey and Kirby as co-allocation counsel, responsible for assessing CEA and antitrust claims for the purpose of fairly distributing over $2 billion in settlement proceeds. Chicago Counsel Cafferty Clobes also assisted in that effort.

intent to create artificial price movements upwards or downwards."[10] Spoofing artificially created demand, and the corresponding effect was that futures prices were artificially suppressed or inflated accordingly.[11]

### A. Nussbaum Law Group and its Clients Have Aggressively Prosecuted this Action.

NLG filed the first action in this District, *Breakwater Trading LLC v. JP Morgan Chase & Co.*, No. 1:20-cv-03515, two business days after *Proctor v. JP Morgan Chase & Co.*, No. 1:20-cv-02666 (N.D. Ill.), was first filed in the Northern District of Illinois.[12] Breakwater was a top 20 trader of Treasury Futures and related instruments during much of the class period. *See* Ex. 3, Stern Decl. ¶ 7. During that period, Breakwater traded over 40,000 Treasury Futures contracts per trading day, and its combined daily trading of Treasury Bonds and Futures averaged over $4 billion in notional value. *Id.* ¶ 5.[13] NLG has previously represented Breakwater in other matters.

On February 25, 2020, JPMorgan reported in its 2019 Form 10-K that "various authorities, including the Department of Justice's Criminal Division, are conducting

---

[10] Commodity Futures Trading Commission, Interpretive Guidance and Policy Statement on Disruptive Practices, https://www.cftc.gov/sites/default/files/idc/groups/public/@newsroom/documents/file/dtp_factsheet.pdf (last visited August 20, 2020).

[11] Matthew Leising, *Spoofing*, Bloomberg (Jan. 29, 2020), https://www.bloomberg.com/quicktake/spoofing (last visited August 20, 2020).

[12] The subsequent actions in the Northern District of Illinois were not filed until several weeks later.

[13] Lowey touted the scope of its client's trading in successfully applying for a lead counsel position in *In re GSE Bonds Antitrust Litigation*, No. 1:19-cv-1704. *See id.* ECF 95, at 19. *See also id.* at 18 (support of plaintiff with "greatest economic interest" is "highly relevant" to lead counsel selection) (citing *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2011 WL 5980198, at *3 (S.D.N.Y. Nov. 29, 2011)).

investigations relating to trading practices in the metals markets and related conduct."[14] It added
that JPMorgan was "also… responding to *related requests concerning similar trading-practices
issues* in markets for other financial instruments, such as U.S. Treasuries."[15] NLG immediately
commenced its investigation, consulted with Breakwater, contacted Defendants' counsel in
*Precious Metals*, and confirmed that the same firm (Sullivan & Cromwell) would be representing
Defendants in this action. NLG also compiled Breakwater's extensive transactional data, and
consulted with an industry expert with 15 years' experience in trading Treasury instruments, and
a former Treasuries' trader at one of the nation's largest hedge fund management companies.

NLG also promptly contacted counsel for plaintiffs in related Treasury spoofing actions
that were then filed and pending in the Northern District of Illinois ("Chicago Counsel"), seeking
to reach agreement as to venue without the necessity of a motion before the Judicial Panel on
Multidistrict Litigation (the "Panel"). Six weeks later—after NLG's efforts to transfer the related
actions to this District were repeatedly rebuffed by Chicago Counsel—NLG filed a motion
before the Panel to centralize all of the related actions in this District. Chicago Counsel
subsequently agreed to transfer their actions, as is reflected in stipulations between the parties in
each of the three actions.[16] The two earliest of those stipulations are premised on Defendants
having "entered in Rule 408 discussions [with certain Chicago counsel] and beg[inning] the
process of establishing a framework for early resolution of the litigation."

---

[14] JPMorgan Chase & Co., 2019 Form 10-K (Feb. 25, 2020), at 28, available at:
https://www.sec.gov/ix?doc=/Archives/edgar/data/19617/000001961720000257/corp10k2019.ht
m (last accessed August 20, 2020).

[15] *Id.* (emphasis added).

[16] NLG promptly withdrew its Panel motion, and the Panel entered an Order deeming it
moot.

Kessler Topaz and NLG filed an action on behalf of Endeavor (another client NLG had previously represented) in this District on July 9, 2020. Thereafter, the firms assembled Endeavor's extensive transactional data, which Kessler Topaz's Financial Research and Analysis Department has been actively reviewing and analyzing. During certain portions of the Class Period, Endeavor, like Breakwater, was a top 20 trader of Treasury Futures and related instruments during much of the class period[17]—upon information and belief, far surpassing the market activity of any other named plaintiffs, save for Breakwater. During those periods, Endeavor traded on average on a daily basis over $2.5 billion in notional value of Treasury Futures and related instruments.[18]

Throughout the pendency of these actions, NLG has focused its efforts on moving the related actions forward, and invited all plaintiffs' counsel to an organizational call to address, *inter alia*, early discovery, the class definition, experts, and organizing a leadership structure. *See Manual for Complex Litigation (Fourth)* § 10.22 ("In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged."). Rather than engage in collegial discussions, Chicago Counsel wrote to this Court, requesting an expedited schedule for the submission of contested leadership submissions, and failed to participate in the scheduled all-plaintiffs' call on July 24, which went forward without them.[19]

---

[17] *See* Ex. 4, Thelen Decl. ¶ 9; Ex. 5, Serbinski Decl. ¶ 7

[18] *See* Ex. 4, Thelen Decl. ¶ 9; Ex. 5, Serbinski Decl. ¶ 7

[19] *Cf.* Third Circuit Task Force on Selection of Class Counsel, 208 F.R.D. 340, 416 n.283 (2002) ("[T]he court should always encourage the parties themselves to agree on lead counsel, while imposing its own choice only in extraordinary circumstances.").

### B. Nussbaum Law Group has Explored Early Discovery and Preliminary Rule 408 Issues with Defendants.

Defendants' counsel have had preliminary Rule 408 discussions with NLG and, upon information and belief, other plaintiffs' counsel, and represented that there have been no substantive Rule 408 discussions related to this case with any plaintiffs' counsel, and that they do not intend to favor any plaintiffs' firm over another. NLG has raised with Defendants the possibility of pre-complaint discovery, which Defendants agreed to consider. *See* July 2, 2020 Joint Status Ltr. (ECF 15), at 2.[20] If the Court is inclined to allow that discovery, or should the parties agree to an early exchange of information to facilitate Rule 408 discussions, Plaintiffs will focus on Defendants' trading records and contemporaneous market data, with an eye towards: (1) negotiating with Defendants as to the identification of spoofing events[21]; (2) negotiating with Defendants as to prices that would have prevailed absent Defendants' spoofing; (3) identifying class members injured by Defendants' misconduct, and; (4) analyzing damages. As fiduciaries for the proposed class, NLG and Kessler Topaz will of course be receptive to any reasonable settlement process and offer. To that end, the parties' negotiations as to NLG's previously proposed protective order and proposal for early discovery will be integral to that

---

[20] *See also In re Broiler Chicken Antitrust Litig.*, 2017 WL 4322823, at *3–4 (N.D. Ill. Sept. 28, 2017) (court ordered limited production of documents already produced to the Florida Attorney General before resolution of any motions to dismiss); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687-JLL- JAD (D.N.J. July 5, 2016), ECF No. 209 (order requiring production of DOJ documents); *In re Pool Products Distribution Market Antitrust Litig.*, No. 12-md-02328-SSV-JCW (E.D. La. June, 4, 2012), ECF No. 93 (production of FTC documents prior to answer or motion to dismiss); *In re High Tech Employee Antitrust Litig.*, No. 11-cv-2509 (N.D. Cal. Oct. 26, 2011), ECF No. 88 (production of DOJ documents prior to resolution of motion to dismiss).

[21] *See, e.g.,* D. Michaels, *Traders Accused of Market Manipulation Allege Misconduct by Prosecutors*, Wall Street Journal, Aug. 19, 2020 (describing dispute between Department of Justice and criminal spoofing defendants as to identification of spoofing events).

process, as will the selection of a mediator, and adoption of a mediation protocol to allow for an early proffer and exchange of data and other relevant information.

NLG's vision in this context is informed by its ongoing experience in *In re Wawa, Inc. Data Security Litigation*, No. 19-cv-6019 (E.D. Pa.), in which NLG serves as co-lead counsel. As in this case, the defendant raised settlement to NLG in the context of framing a proposed scheduling order, and made provisions in that order to allow for time directed to that end. Wawa has agreed to a protective order at an early stage, and agreed to provide early discovery. The parties agreed to mediate before the Honorable Diane M. Welsh of JAMS. That recent relevant experience would aid NLG in moving expeditiously here, should early Rule 408 discussions come to fruition.

## III.   ARGUMENT

In assessing applications to serve as interim lead counsel, the Court considers: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

In *In re Interest Swaps Antitrust Litig.*, 2016 WL 4131846 (S.D.N.Y., Aug. 3, 2016) ("*IRS*"), this Court designated two firms as interim co-lead counsel for the class, and authorized three additional firms to assist those firms as the needs of the case dictated. Such an arrangement would be most efficient and effective in this case as well. A key distinction between this case and *IRS* is that all of these actions are based primarily on a government investigation, public

information, and a disclosure by JPMorgan. The factors outlined by the Court in *IRS* favor the appointment of NLG and Kessler Topaz as interim co-lead counsel, and Fine Kaplan and Freedman Boyd among the firms authorized to assist them.[22]

### A. Breakwater and Endeavor are Better Positioned to Assist Counsel and Serve the Class than Any Other Plaintiffs.

Breakwater initially approached counsel about this case and serving as a named plaintiff. Breakwater's Managing Member, Richard Stern, has been an active daily trader managing portfolios including Treasury Futures since 2004. *See* Ex. 3, Stern Decl. ¶ 2. He became the Managing Member and majority shareholder of Breakwater within eight years after graduating from college and joining Breakwater as a clerk. *Id.* ¶ 3. He is currently a Partner at GX2 Systems LLC and a Senior Fixed Income and Relative Value Trader at Geneva Trading. *Id.* ¶ 6. At Geneva, he continues to trade and manage complex portfolios of Treasury cash and Futures. In addition to trading, he teaches and trains junior staff with respect to trading Treasury Bonds and Futures, and his team develops proprietary analytical tools. *Id.*

Justin Serbinski, one of Endeavor's two managing partners, has been trading Treasury Bonds and Futures since 1996. *See* Ex. 5, Serbinski Decl. ¶ 2. He established Endeavor along with Jason Thelen in 2008. *Id.* ¶ 7. Endeavor's principal trading business was in Treasury Futures and related instruments. *Id.* In 2012, he joined Sun Holdings LLC, where he has continued to trade Treasury Bonds and Futures. *Id.* ¶ 8. Endeavor's other managing partner, Jason Thelen, has been trading Treasury Bonds and Futures since 1993. Ex. 4, Thelen Decl. ¶ 2.

Breakwater and Endeavor are valuable resources, fully committed to this case, and will use their experience and expertise to serve the class. They have already held discussions with

---

[22] NLG has previously worked collegially and effectively with all of the firms in this case, and could work with any of them here should the Court so rule.

counsel, provided extensive data and industry background, process, and procedures, and are highly committed to the prosecution of these actions. Breakwater's and Endeavor's respective principals were trading in the relevant markets on a daily basis during a large swath of the relevant period, and can offer class counsel unique assistance in prosecuting this action, far beyond that of typical class representatives. Conversely, the other plaintiffs' complaints say virtually nothing about their relevant trading, and Kessler Topaz investigators were unable to find information suggesting a meaningful role in the relevant market for any of them.

### B.  Nussbaum Law Group and Kessler Topaz Have Performed Substantial Work Identifying and Investigating Plaintiffs' Claims.

NLG was initially alerted to the existence of plaintiffs' claims by Breakwater, its experience in *Precious Metals*, and public filings by JPMorgan and the Department of Justice. NLG immediately commenced the investigation supporting Breakwater's complaint, and filed that complaint well before any additional complaints were filed (with the exception of the *Proctor* case). With the understanding that a consolidated amended complaint would be necessary, NLG and Kessler Topaz have continued to investigate plaintiffs' claims in consultation with their clients and experts.

NLG's and Kessler Topaz's experts and internal investigators have: examined market activity during the class period to assess the potential impact of Defendants' spoofing; assessed the information likely to be at JPMorgan's disposal, and the information plaintiffs will need to collect from other sources; considered the most likely sources of incriminating evidence in Defendants' records; and considered steps plaintiffs might take to ensure the preservation of relevant evidence.

**C.   Nussbaum Law Group and Kessler Topaz Have Extensive Experience in Complex Class Action Litigation**

Ms. Nussbaum has successfully served as sole or co-lead counsel in class actions in courts across the nation. That experience has resulted in her having faced and successfully resolved many of the challenges and circumstances that may arise in this case. Moreover, as the overwhelming majority of class actions settle well before trial, Ms. Nussbaum's substantial trial experience stands out in the field. After Ms. Nussbaum earned a verdict in favor of her client Kaiser Foundation Health Plan, Inc. in the above-referenced RICO action against Pfizer, Judge Patti Saris commented that it was "a fabulous trial[.] [I]t's the kind of thing that you become a judge to sit on." *See In re Neurontin Marketing and Sales Practices Litig.*, No. 04-1081 (D. Mass.). *See also In re Aluminum Warehousing Antitrust Litig.*, 2020 WL 4218329, at *31 n.35 (S.D.N.Y. July 23, 2020) ("[E]stimable plaintiffs' counsel, who have played an energetic and leading role in this MDL for the better part of a decade, are well-qualified."). NLG has also served the classes in each of several cases in which plaintiffs asserted CEA claims,[23] and its attorneys have served as class counsel in additional CEA cases prior to joining NLG.[24]

Attorneys at Kessler Topaz, including Joseph Meltzer, have decades of experience litigating some of the nation's most complicated financial fraud class actions and have successfully recovered billions of dollars for class members. The firm's unflinching commitment

---

[23] *See, e.g.*, *Ploss v. Kraft Foods Group, Inc.*, No. 1:15-cv-02937 (N.D. Ill.); *In re London Silver Fixing, Ltd., Antitrust Litig.*, No. 1:14-md-02573 (S.D.N.Y.); *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, No. 1:14-md-02548 (S.D.N.Y.); *Sullivan v. Barclays PLC*, No. 1:13-cv-02811 (S.D.N.Y.); *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 1:13-cv-07789 (S.D.N.Y.).

[24] *See, e.g.*, *In re: Groupon, Inc. Securities Litigation*, No. 12-cv-2450 (N.D. Ill.); *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-03600 (S.D.N.Y.); *In re Natural Gas Commodity Litig.*, No. 03-cv-6186 (S.D.N.Y.); *Lawrence E. Jaffe Pension Plan v. Household International, Inc.*, No. 02-cv-5893 (N.D. Ill.).

to zealous advocacy on behalf of its clients has resulted in large and historic recoveries in numerous instances.[25] Kessler Topaz is also routinely recognized for its focus and commitment to excellence.[26]

Mr. Meltzer has been personally involved in recovering over a billion dollars on behalf of clients and consumers affected by fraudulent or deceptive practices at financial institutions, including, among others: *In Board of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09-cv-00686 (SAS) (S.D.N.Y.) (Mr. Meltzer served as the lead partner in charge of Kessler Topaz in its role as lead counsel -- action settled for $150 million on the eve of trial); *CompSource Oklahoma v. BNY Mellon, N.A.*, No. 08-cv-469 (E.D. Okla.) (serving as interim class counsel in action settling for $280 million); *In Re: The Bank of New York Mellon ADR FX Litig.*, No. 16-cv-00212 (S.D.N.Y.) (serving as lead counsel in action settling for $72.5 million); *Merryman v. Citigroup, Inc.*, No. 15-cv-09185 (S.D.N.Y.) (serving as lead counsel in action settling for $14.8 million).These cases involve zealously advocating over several years against well-funded defendants. Notably, in this District, Mr. Meltzer was a member of the three-person plaintiffs' Executive Committee in *In re Bank of New York Mellon Corp. FOREX Transactions*

---

[25] Those include: (1) *In re Bank of Am. Corp. Secs., Derivative, and ERISA Litig.*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery after summary judgment); (2) I*n re Southern Peru Copper Corp. Shareholder Derivative Litig.*, No. 961-CS (Del. Ch.) ($2 billion judgment following a multiday trial; the judgment is the largest recovery in Delaware Chancery Court history); (3) *In re Citigroup, Inc. Action Bond Litig.*, No. 08-cv-9522 (S.D.N.Y.) ($730 million recovery); (4) *In re Wachovia Preferred Secs. and Bond/Notes Litig.*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery); (5) *In re Dole Food Co., Inc. Stockholder Litig.*, No. 8703-VCL (Del. Ch.) ($148 million judgment); and (6) *Luther, et al. v. Countrywide Fin. Corp.*, No. 12-cv-05125 (C.D. Cal.) ($500 million recovery).

[26] Kessler Topaz has received numerous honors, including recurring inclusion on the National Law Journal's Plaintiff's Hot List and BTI Consulting Group's Honor Roll of Most Feared Law Firms. The firm has also been recognized as a ranked firm by Chambers & Partners and is a repeat winner of "Class Action Litigation Firm of The Year" by the Legal Intelligencer, Philadelphia's primary legal publication.

*Litig.,* No. 12-md-2335 (S.D.N.Y.), which settled for $335 million. During the final fairness hearing, Judge Lewis A. Kaplan praised counsel for their "wonderful job" and stated that they deserved a "world of credit" for their efforts.

Fine Kaplan is a nationally recognized firm located in Philadelphia that devotes its practice to antitrust, class actions, complex commercial litigation, consumer protection, and white collar criminal defense. Since its founding in 1975, Fine Kaplan has been involved in many of the country's most significant historic antitrust and class action cases. The firm has served as lead counsel, on executive committees, as chair of substantive committees such as briefing, discovery or expert committees and has served in a variety of other supporting roles as well.

Ms. Liebenberg has been appointed by numerous courts to serve as Lead Counsel including most recently her appointment by Judge Cynthia Rufe as Lead Counsel for the End Payer Class in *In re Generic Pharmaceuticals Pricing Antitrust Litigation,* MDL No. 2724 (E.D. Pa.); by Judge Joy Flowers Conti as Co-Lead Counsel for the Class in *In re Railway Industry Employees No-Poach Antitrust Litigation*, MDL No. 2850 (W.D. Pa.) ("*Railway Employees*"); and by Judge Gene Pratter as Co-Lead Counsel for the Consumer Class in *In re Wawa, Inc. Data Security Litigation*, No. 19-cv-6019 (E.D. Pa.). *See* Ex. 6, Liebenberg Decl. ¶ 4. Ms. Liebenberg has chaired numerous organizations devoted to gender equality in the profession, including the American Bar Association's Commission on Women in the Profession, the ABA Gender Equity Task Force, the ABA Presidential Initiative on Achieving Long-Term Careers for Women in Law, and DirectWomen (the only organization devoted to increasing the number of women attorneys on corporate boards). *Id.* ¶ 9.

Joseph Goldberg has practiced complex commercial litigation for over 30 years. Many of his cases involved complex financial instruments, financial markets, and the trading of such instruments or on such markets. Mr. Goldberg has developed a reputation for his expertise in working with economic and statistical experts. *See* Ex. 7, Goldberg Decl. ¶ 2. He served as lead trial counsel for the plaintiffs in the *Urethanes* case. He has also served as lead plaintiffs' trial counsel in two other antitrust cases, and on the trial teams in at least four other cases. *Id.* He is also an author of over 20 publications, and has received a number of recognitions from national and professional organizations. *Id.* ¶ 3.

### D. Nussbaum Law Group and Kessler Topaz Have Committed and Will Commit Significant Resources to this Litigation.

NLG and its attorneys anticipate being in a position to commit whatever time is necessary to the efficient and effective prosecution of this case.[27] Ms. Nussbaum's experience has given her an understanding of the magnitude of the time, energy and resources that these cases require for effective leadership. NLG routinely commits substantial sums of money to cases that it litigates, and would expect to do so in this case. NLG has no agreement with a litigation funder for any purposes in this case, or any other case, in part so as to avoid the conflicts that may arise and are a concern to courts. NLG can commit any of its attorneys to this case, because all of its attorneys specialize in complex litigation, and the firm is selective in the cases for which it seeks lead

---

[27] In addition to Ms. Nussbaum, NLG attorneys Bart Cohen and Christopher Sanchez will manage the case. Mr. Cohen is a former partner at Berger Montague, and part of a group of senior attorneys responsible for leading the prosecution of *Interchange Fee*, which resulted in the district court's approval of a settlement providing for $5.7 billion in cash payments and injunctive relief worth billions more. Mr. Sanchez is a former partner at Cafferty Clobes Meriwether & Sprengel LLP, where he served plaintiffs in several CEA actions. More recently, he successfully represented New Mexico's public school districts and children in a landmark education civil rights case.

positions. That selectivity ensures its capacity to submerse itself in any leadership role in those cases in which it does seek such a position.

Kessler Topaz has ample resources – with nearly 100 attorneys, in-house Investigative and Financial Research and Analysis Departments, experienced support staff, and offices on both coasts – to litigate complex cases of any size. This case will also likely involve a substantial financial investment that Kessler Topaz is more than able to meet. The firm is accustomed to financing complex cases and routinely invests significant financial resources in litigating claims against the largest and most well-funded defendants in the world—the firm funds its cases and does not rely on litigation funders.

### E.  Diversity Interests Would be Best Served by the Appointment of Nussbaum Law Group and Kessler Topaz.

Diversity of opinion, sex, and national origin leads to better results in all business contexts.[28] As discussed above, within recent weeks, courts have emphasized the need to avoid "the 'repeat player' problem in class counsel appointments that has burdened class action litigation and MDL proceedings." *See* Order re Consolidation and Interim Class Counsel, at 3, *In re Robinhood Outage Litig.*, No. 20-cv-01626 (N.D. Cal., July 14, 2020). The appointment of Chicago Counsel would be contrary to both those principles.

Recent reports and empirical studies confirm the profound disparity in the representation of women in lead counsel roles.[29] In light of that, the Duke Law Center for Judicial Studies—a coalition of 22 MDL practitioners and 17 federal and state court judges—adopted MDL Best

---

[28] *See, e.g.*, Hunt, Layton, and Prince, *Why diversity matters*, McKinsey (Jan. 2015); Barta, Kleiner, and Neumann, *Is there a payoff from top-team diversity?,* McKinsey (Apr. 2012).

[29] *See, e.g.*, Scharf and Liebenberg, *First Chairs at Trial: More Women Need Seats at the Table, American Bar Association*, ABA Publishing (2015); Chamblee Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. Rev. 71, 93 n. 102 (2015); Dodge, *Facilitative Judging: Organizational Design in Mass-Multidistrict Litigation*, 64 Emory L.J. 329, 364 (2014).

Practice 4E, which provides that a "transferee judge should take into account whether the leadership team adequately reflects the diversity of legal talent available and the requirements of the case" and urged judges to "appoint a diverse group, with respect to not only prior experience and skills, but also gender," among other considerations.[30] NLG is the only plaintiffs' firm in this proceeding that is both founded and led by a woman. Fine Kaplan is the only other firm in this proceeding that is led by a woman. In addition, Kessler Topaz's team dedicated to this litigation consists of two women—partner Melissa L. Troutner and associate Jordan Jacobson.[31]

Moreover, Lowey, Kirby, and Scott have repeatedly served as lead counsel—and frequently as sole lead counsel—in actions involving manipulation claims. Combined, Lowey, Kirby, and Scott have served as lead counsel, co–lead counsel and/or interim lead counsel, in 19 CEA class actions. NLG has agreed to support them in several of those cases so as to facilitate the prompt and efficient prosecution of those cases, absent contested lead counsel motions.[32] NLG and Kessler Topaz's relevant experience is more than sufficient to justify the Court's decision to avoid perpetuating the "repeat player" problem.

### F.  Lowey's Appointment Could Raise Potential Conflict Concerns.

*Precious Metals* involves the same defendants and defense counsel and, upon information and belief, class members who overlap with class members in this case. The order appointing

---

[30] *Id.* at 58-59. *See* The Hon. S. Duval Jr., *Considerations in Choosing Counsel for Multidistrict Litigation Cases and Mass Tort Cases*, Louisiana Law Review (Winter 2014).

[31] Ms. Nussbaum and Ms. Liebenberg maintain the authority within their firms to devote as much time as is necessary to this case. Ms. Troutner's background is such that there is every reason for Kessler Topaz to allow her to do the same.

[32] *See, e.g., Precious Metals*; *In re GSE Bonds Antitrust Litig.*, No. 1:19-cv-01704 (S.D.N.Y.); *Ploss v. Kraft Foods Group, Inc.*, No. 1:15-cv-02937 (N.D. Ill.); *Sullivan v. Barclays PLC*, No. 1:13-cv-02811 (S.D.N.Y.); *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 1:13-cv-07789 (S.D.N.Y.).

Lowey in *Precious Metals* gives the firm sole authority among class counsel as to virtually all matters. *See Precious Metals*, Order of Feb. 5, 2019 ¶¶ 3-5 (ECF 13). Several courts have held that a single firm's concurrent prosecution of related actions against common defendants creates a conflict that precludes any such firm from adequately representing the class in either action.[33] That is particularly pertinent here where Lowey is serving as sole lead in *Precious Metals*.

NLG and Kessler Topaz's appointment here would preclude any such appearance of a possible conflict. Lowey's experience in a related matter does not support a leadership position here where Lowey could be in a conflicted position to the potential detriment of the proposed class—particularly where NLG's and Kessler Topaz's relevant expertise is more than sufficient to effectively represent the interests of the class.

### G.  The Related Actions Should be Consolidated.

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." As this Court has noted, Rule 42(a) "empowers a trial judge to consolidate actions . . . where consolidation will avoid needless costs or delay." *Mustafin v. GreenSky, Inc*., 2019 WL 1428594, at *3 (S.D.N.Y. Mar. 29, 2019) (citation omitted). Moreover, consolidation of class action suits is appropriate where multiple plaintiffs bring actions against the same defendants pursuant to the same statute and allege the same facts. *See id*. (consolidating class action complaints against the same defendants under the same provision of law and alleging the same operative facts).

There are currently seven related cases pending before this Court:

1.  *Breakwater Trading LLC v. JP Morgan Chase & Co. et. al.*, No. 1:20-cv-03515

---

[33] *See, e.g.*, *Kuriakose v. Federal Home Loan Mortg. Co.*, 2008 WL 4974839, at *7 (S.D.N.Y., Nov. 24, 2008); *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 590 (W.D. Tex. 2002).

2.  *Grace v. JP Morgan Chase & Co.,* No. 1:20-cv-4523

3.  *Endeavor Trading, LLC v. JP Morgan Chase & Co.,* No. 1:20-cv-5285

4.  *Robert Charles v. JP Morgan Chase & Co.,* No. 1:20-cv-5298

5.  *Proctor, III, v. JP Morgan Chase & Co.,* No. 1:20-cv-5360

6.  *Budo Trading v. JP Morgan Chase & Co.,* No. 1:20-cv-5772

7.  *Gramatis v. JP Morgan Chase & Co.,* No. 1:20-cv-5918

All of these are proposed class actions against J.P. Morgan Chase & Co., and certain related entities, and each complaint alleges that Defendants manipulated the prices of Treasury Futures by spoofing in violation of the Commodity Exchange Act.[34] Given the common defendants, statutory claims, and allegations, separate adjudication of these actions would result in an unduly burdensome duplication of labor and expense. Consolidation of these cases will conserve judicial resources and eliminate the potential for conflicting results. The actions are in their infancy; consolidation will not prejudice any of the parties.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court appoint Linda Nussbaum of NLG and Joseph Meltzer of Kessler Topaz as interim co-lead counsel, designate Fine Kaplan and Freedman Boyd as firms to whom interim co-lead counsel may delegate responsibility as is necessary for the effective and efficient prosecution of these actions, and consolidate all of the related cases.

---

[34] Specifically, each complaint alleges violations of sections 6(c), 6(d), 9(a), and 22(a) of the Commodity Exchange Act.

Dated: August 21, 2020                          /s/ Linda P. Nussbaum
                                                 Linda P. Nussbaum (NY 1594753)
                                                 Bart D. Cohen
                                                 Christopher B. Sanchez
                                                 NUSSBAUM LAW GROUP, P.C.
                                                 1211 Avenue of the Americas, 40th Floor
                                                 New York, NY 10036-8718
                                                 (917) 438-9102
                                                 lnussbaum@nussbaumpc.com
                                                 bcohen@nussbaumpc.com
                                                 csanchez@nussbaumpc.com

                                                 Joseph H. Meltzer
                                                 Melissa L. Troutner
                                                 Jordan Jacobson
                                                 KESSLER TOPAZ MELTZER & CHECK, LLP
                                                 280 King of Prussia Road
                                                 Radnor, PA 19087
                                                 Telephone: (610) 667-7706
                                                 jmeltzer@ktmc.com
                                                 mtroutner@ktmc.com
                                                 jjacobson@ktmc.com

                                                 Roberta D. Liebenberg
                                                 Adam J. Pessin
                                                 FINE, KAPLAN AND BLACK, R.P.C.
                                                 One S. Broad St., 23rd Floor
                                                 Philadelphia, PA 19107
                                                 (215) 567-6565
                                                 rliebenberg@finekaplan.com
                                                 apessin@finekaplan.com

                                                 Michael E. Criden
                                                 Kevin B. Love
                                                 Lindsey C. Grossman
                                                 CRIDEN & LOVE, P.A.
                                                 7301 S.W. 57th Court, Suite 515
                                                 South Miami, FL 33143
                                                 (305) 357-9000
                                                 mcriden@cridenlove.com
                                                 klove@cridenlove.com
                                                 lgrossman@cridenlove.com

21

Joseph Goldberg
FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD P.A.
20 First Plaza, Suite 700
Albuquerque, NM 87102
(505) 244-7520
jg@fbdlaw.com

*Counsel for Plaintiffs Breakwater Trading, LLC,
Endeavor Trading, LLC and John Grace and the
Proposed Class*